Commonwealth of Pennsylvania, Department of Public Welfare, *v.* Temple University—of the Commonwealth System of Higher Education, Appellant.

Argued May 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Matthew M. Strickler,* with him *Leonard C. Homer, Peter Platten,* and, of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Darius G. C. Moss,* Assistant Attorney General, with him *Andrea Jacobson Malak,* Assistant Attorney General, *Barry A. Roth,* Assistant Attorney General, and *Marx S. Leopold,* General Counsel, for appellee.

*Perrin C. Hamilton,* with him *Walter T. Darmopray,* and *Hamilton, Darmopray & Malloy,* for amicus curiae, Northwestern Institute of Psychiatry.

*Frederick L. Fuges,* with him, of counsel, *MacCoy, Evans & Lewis,* for amicus curiae, Contributors to the Pennsylvania Hospital.

*Brenda C. Kinney,* with her *James D. Crawford, Frank H. Abbott,* and, of counsel, *Schnader, Harrison, Segal & Lewis,* for amicus curiae, Delaware Valley Hospital Council.

*Bruce Eckert,* with him *James H. Stewart, Jr.,* and *Nauman, Smith, Shissler & Hall,* for amicus curiae, Hospital Association of Pennsylvania.

OPINION BY JUDGE BLATT, September 8, 1975:

In this appeal from an adjudication of the Commonwealth of Pennsylvania, Department of Public Welfare (Department), Temple University of the Commonwealth System of Higher Education (Temple) pursues a challenge to the Department's practice of denying payment to hospitals under the Medical Assistance Program for inpatient hospital care (a) during extended stays caused by the Temple hospital's inability to transfer a patient promptly to a lesser level of care, such as a nursing home or the patient's home, without regard to whether or not such facilities are available to that patient, and (b) for more than 60 days for any one patient in a benefit period.

The case of Joseph Giacoponelli was selected to test these practices and the facts of his case are not contested. Mr. Giacoponelli, a welfare recipient occupying a room in a Philadelphia boarding house, was admitted as an inpatient to the Temple University Hospital on August 18, 1971, suffering from a hip infection. In addition, he suffered from cerebral palsy, had seizures, was mentally retarded, and was almost completely blind. During the initial part of his hospitalization, hip surgery was performed requiring Mr. Giacoponelli to remain bedridden for some time. On September 23 he began to walk with the aid of parallel bars and a walker. He remained in the hospital, however, for a total of 90 days until November 15, 1971.

Mr. Giacoponelli's case was selected for evaluation by the Department's Hospital Utilization Review Committee. Hospital utilization review is designed to promote efficient fiscal and medical utilization of hospital care facilities. Under Departmental Regulation 9421.521 "[w]hen review of a case selected by a Hospital Utilization Review Committee indicates that there has been improper use of hospital facilities or services, a record of the Committee's findings and recommendations will be submitted on Form PA 102, 'Utilization Review Case Summary,' to the fiscal

agent or Department within 48 hours of such determination." The regulation continues: "Misutilization *to be reported* includes, . . . (c) Extended durations of stay due to failure to transfer the patient promptly to a lesser level of required care, such as a nursing home or the patient's home, when hospital-type care is no longer medically necessary, regardless of whether such facilities are available to the patient." Pa. Manual Section 9421.521 (c). (Emphasis added). On the basis of this regulation, the Department's Hospital Utilization Review Committee denied Temple reimbursement for hospital services rendered to Mr. Giacoponelli after September 28, 1971 on the grounds that he should have been transferred by that time to a lesser care facility. Temple requested a hearing on the decision denying reimbursement, and the hearing examiner, on the basis of the evidence taken, concluded that:

"11. Temple University Hospital records indicate the medical opinion that the patient was medically ready for a transfer to a lesser care facility (nursing home) on October 5, 1971.

"12. The patient had no relatives able to care for him.

"13. No lesser care facility was available for the care of the patient until November 15, 1971.

"14. Temple University Hospital diligently put forth every effort to locate a lesser care facility or competent relative, without success."

The hearing examiner, therefore, extended the period for reimbursement from September 28, 1971 to but not including October 5, 1971, again refusing further reimbursement on the basis of Regulation 9421.521(c). It is from this decision that Temple now appeals to this Court.

Temple, along with the helpful assistance of amici curiae, first argues that Regulation 9421.521(c), provides no basis for denial of payment for inpatient hospital services rendered to medical assistance patients whose

medical condition requires a lesser level of care than acute hospital care when no lesser care facility is available.

We must agree. The case presented is one largely involving the interpretation and application of the departmental regulations. It is obvious that Regulation 9421.521 provides for the reporting of misutilization and that it does not itself speak to the issue of withholding reimbursement. Reimbursement is governed by Regulation 9421.532. That regulation authorizes the Director of Utilization of the Bureau of Medical Assistance, after considering the report and recommendations of the Utilization Review Committee, to decide on one of the following courses of action for such cases:

"a. Deny reimbursement or payment for services for all or part of a hospital stay; . . .

"b. Authorize reimbursement for the services, either in whole or in part, based on the medical necessity for the services." Pa. Manual Section 9421.532.

The regulations, therefore, allow for the exercise of some administrative discretion in determining whether or not, and to what extent hospitals shall be reimbursed for misutilization. In misutilization cases such as this where a patient may no longer be in need of continued acute hospital care but does need some lower level care, we believe that it would be an abuse of administrative discretion to deny reimbursement to hospitals which have diligently put forth every effort to locate, without success, an appropriate lesser care facility or a competent relative for the patient. In such circumstances there is still a medical necessity for the hospital services. To hold otherwise would be to read penalty provisions into the regulations where the culpability of the hospital for the particular misutilization involved cannot be established. Clearly this type of penalty would not further the purposes of the utilization review procedure. We hold, therefore, that reimbursement for Mr. Giacoponelli's care in

Temple Hospital must be made for the period during which he remained in the hospital because of the unavailability of a lesser care facility to which he otherwise should have been transferred.

Notwithstanding our conclusion that the Department should not have denied Temple reimbursement during the period when Mr. Giacoponelli's hospitalization was deemed to have constituted misutilization, Temple's entitlement to reimbursement would have expired under Section 443.1 of the Public Welfare Code,[1] 62 P.S. §443.1 after October 16, 1971 leaving 30 additional days during which Temple would not have been reimbursed even though it still continued caring for Mr. Giacoponelli. Under Section 443.1, which is reiterated in Regulation 9421.411 of the Pa. Manual, medical assistance payments shall be made in behalf of eligible persons for a maximum of 60 days of hospital care in a benefit period. Temple asserts that this 60-day limitation conflicts both with federal regulations and with the 5th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. Initially, we do not believe that the 60-day limitation violates the federal regulation. That federal regulation, 45 CFR §249.10 (a) (5) (i),[2] specifically contemplates state plans of limited duration so long as the plans are sufficient to *reasonably achieve* their purpose. Had the federal govern-

---

1. Act of June 13, 1967 P.L. 31, *as amended.*

2. Quoted in full the regulation reads:

"(a) *State plan requirements.*—A State plan for medical assistance under title XIX of the Social Security Act must:

. . . .

"(5) (i) Specify the amount and/or duration of each item of medical and remedial care and services that will be provided to the categorically needy and to the medically needy, if the plan includes this latter group. Such items must be sufficient in amount, duration and scope to reasonably achieve their purpose. With respect to the required services for the categorically needy (sub-

ment wished payments to be of unlimited duration, it could have so indicated. Instead, the regulation indicates that "[a]ppropriate limits may be placed on services. . . ." Such criteria as medical necessity or criteria contained in utilization or medical review procedures are expressly deemed to provide a basis for such limitations. We believe that a 60-day limitation is appropriate because there is no real evidence here that it is not of sufficient duration to *reasonably achieve* the purpose of providing inpatient hospital care for indigent individuals.

The primary focus of Temple's challenge to the 60-day limitation is the argument that the medical assistance program in which Temple has agreed to participate, obligates the hospital to provide non-reimbursable care after the expiration of the 60-day benefit period and, therefore, constitutes an appropriation of hospital property for use without just compensation in violation of the 5th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. The Commonwealth counters that any appropriation of property which may result from Temple's participation in the medical assistance program, results as the consequential effect of a legitimate exercise of the Commonwealth's police power and, therefore, does not constitute a compensable taking.

Generally speaking, when property is appropriated to a beneficial public use, it is deemed a compensable taking. *Muggler v. Kansas,* 123 U. S. 623 (1887). The police power, on the other hand, is used to control the use of property for the public good where unrestricted

---

paragraph (1) of this paragraph) and the medically needy (subparagraph (2) of this paragraph), the State may not arbitrarily deny or reduce the amount, duration, or scope of, such services to an otherwise eligible individual solely because of the diagnosis, type of illness or condition. Appropriate limits may be placed on services based on such criteria as medical necessity or those contained in utilization or medical review procedures." 45 CFR §249.10.

use of the property would be detrimental to the public interest. *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926). There is no distinct formula by which these two concepts may be distinguished. *See, Pennsylvania Coal Company v. Mahon,* 260 U. S. 393 (1922); *Louisville & Nashville Railroad Company v. Motley,* 219 U. S. 467 (1910). As a general rule, however, it may be said that, although the exercise of the police power by a governmental entity may result in a taking of property through its destruction, the police power is not generally used to appropriate property for the use of the public. We do not believe, however, that these distinctions raised by the parties are dispositive of the case before us. The fact is that Temple entered into a contract with the Commonwealth and expressly agreed to the 60-day limitation condition. It is true that Temple may not have been able to bargain over this particular term but it surely assessed the benefits it might reap from entering into this contract, considered the potential liabilities which might also arise from such provision as the 60-day limitation and concluded that on balance participation in the medical assistance program was to its advantage. There is nothing in the law which would prohibit the parties from agreeing upon such an exchange of consideration. *Cf. Railroad Commission of Texas v. Eastern Texas Railroad Company,* 264 U. S. 79 (1924). Of course, had Temple agreed to the contract under coercion and duress, we could not avoid the constitutional arguments which it has raised. *Turney v. United States,* 115 F. Supp. 457 (Ct. Cl. 1953). Although at oral argument, Temple indicated that as a practical matter it had no real choice other than to accept this contract with the Commonwealth because the receipt of federal and state funding under other programs is apparently closely bound to participation in the medical payments program among others, we do not believe such integrated funding constituted coercion. What Temple is saying, of course, is that the network of Commonwealth

benefits made available to it is a substantial inducement toward accepting this 60-day limitation, but even if agreeing to give unreimbursed medical care after 60 days in exchange for whatever benefits Temple might receive under this program and other programs is, in our view, an extraordinary contract arrangement, it is not one which the parties can claim to have entered under coercion or duress.

We hold, therefore, that the contract entered into by Temple and the Commonwealth contains no provision requiring Temple to be reimbursed for expenses of medical care rendered to indigents after 60 days of reimbursed care. We also hold that the Commonwealth, under Section 9421.521 (c) of its regulation which became part of the Temple contract, is not permitted to deny reimbursement to Temple within the first 60 days of hospitalization where the hospital, because it has been unable to transfer a patient to a lesser level of care for the reason that no such lesser level of care is available, has unavoidably misutilized its facilities by continuing to render care to the patient concerned. We, therefore, issue the following

### ORDER

AND NOW, this 8th day of September, 1975, the order of the Department of Public Welfare is reversed insofar as it denies Temple University reimbursement for hospital services rendered to Joseph Giacoponelli under Section 9421.521 (c) of the Regulation of the Department of Public Welfare, and affirmed insofar as it denies reimbursement under Section 443.1 of the Public Welfare Code, 62 P.S. §443.1.