St. Christopher's Hospital for Children, Appellant *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

Argued March 7, 1977, before Judges Crumlish, Jr., Kramer and Rogers, sitting as a panel of three.

*Winston W. Walp, II*, with him, of counsel, *Townsend, Elliott & Munson,* for appellant.

*Michael P. McGinley,* Assistant Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 27, 1977:

This is an appeal by St. Christopher's Hospital for Children (the Hospital) from an adjudication of the Department of Public Welfare (DPW) which denied the Hospital compensation for custodial care of T.J., an infant, for the period December 21, 1972 to January 4, 1973. We reverse.

The facts and the applicable law are undisputed. On December 6, 1972, T.J., a three-month old child and an eligible medical assistance patient, was admitted to the Hospital after a Philadelphia DPW social worker had found, upon visiting the child's home, that she had been vomiting during the preceding six or seven weeks and that she was unable to retain fluids. On December 8 the Hospital filed a report of suspected child abuse with Philadelphia DPW, as required by law.[1] Philadelphia DPW then petitioned the Family Court Division of the Court of Common Pleas of Philadelphia for custody of the infant pursuant to Section 4 of the Juvenile Court Law, Act of June 2, 1933, P.L. 1433, *as amended,* 11 P.S. §246.[2] At a hearing held

---

[1] Act of August 14, 1967, P.L. 239, *amended by* the Act of December 30, 1970, P.L. 951, *now,* the Child Protective Service Law, Act of November 26, 1975, P.L. 438, 11 P.S. §2201 et seq.

[2] The Juvenile Court Law was repealed by Section 40 of the Juvenile Act, Act of December 6, 1972, P.L. 1464, 11 P.S. §50-337. The subject matter of Section 4 of the Juvenile Court Law is now covered by Section 17 of the Juvenile Act, 11 P.S. §50-314.

January 2, the court determined that T.J. was a deprived child and ordered that she be placed in a foster home. The child responded well to treatment, and by December 20 she was ready for a foster home when one was available. Actual placement was accomplished on January 4.

DPW ruled that since the child was ready for transfer to a foster home on December 20, DPW had no obligation to reimburse the Hospital for custodial care from December 21 to January 4 because she was not then in need of inpatient medical care, and DPW regulations[3] require that non-medical care given a patient awaiting transfer to a lesser care facility be considered a misutilization of funds.

*Department of Public Welfare v. Frankford Hospital,* 26 Pa. Commonwealth Ct. 484, 364 A.2d 957 (1976), and *Department of Public Welfare v. Temple University,* 21 Pa. Commonwealth Ct. 162, 343 A.2d 701 (1975), control this case. There, we reversed DPW's denial of reimbursement in instances where medical assistance patients remained at the respective

[3] Medical Assistance Regulation 9421.521 reads, in part:

9421.521 *Cases Selected by Hospital Utilization Review Committee*

When review of a case selected by a Hospital Utilization Review Committee indicates that there has been improper use of hospital facilities or services, a record of the Committee's findings and recommendations will be submitted on Form PA 102, 'Utilization Review Case Summary,' to the fiscal agent or Department within 48 hours of such determination.

Misutilization to be reported includes, but is not limited to, the following:

. . . .

c. Extended durations of stay due to failure to transfer the patient promptly to a lesser level of required care, such as a nursing home or the patient's home, when hospital-type care is no longer medically necessary, regardless of whether such facilities are available to the patient. . . .

hospitals because no lesser care facilities were available, although their conditions had improved sufficiently to permit transfer. We wrote:

It is obvious that Regulation 9421.521 provides for the reporting of misutilization and that it does not itself speak to the issue of withholding reimbursement. Reimbursement is governed by Regulation 9421.532. That regulation authorizes the Director of Utilization of the Bureau of Medical Assistance, after considering the report and recommendations of the Utilization Review Committee, to decide on one of the following courses of action for such cases:

'a. Deny reimbursement or payment for services for all or part of a hospital stay; . . .

'b. Authorize reimbursement for the services, either in whole or in part, based on the medical necessity for the services.' Pa. Manual Section 9421.532.

The regulations, therefore, allow for the exercise of some administrative discretion in determining whether or not, and to what extent hospitals shall be reimbursed for misutilization. In misutilization cases such as this where a patient may no longer be in need of continued acute hospital care but does need some lower level care, we believe that it would be an abuse of administrative discretion to deny reimbursement to hospitals which have diligently put forth every effort to locate, without success, an appropriate lesser care facility or a competent relative for the patient. In such circumstances there is still a medical necessity for the hospital services. *To hold otherwise would be to read penalty provisions into the regulations where the culpability of the hospital for the particular misutilization involved cannot be established.*

Clearly this type of penalty would not further the purposes of the utilization review procedure. (Emphasis added.)

*Department of Public Welfare v. Temple University, supra,* 21 Pa. Commonwealth Ct. at 166, 343 A.2d at 704, quoted in *Department of Public Welfare v. Frankford Hospital, supra,* 26 Pa. Commonwealth Ct. 484, 364 A.2d at 958.

DPW has attempted to distinguish the *Temple* and *Frankford* cases by arguing, essentially, that in those cases lesser care facilities were in fact unavailable, whereas here, foster homes were available to T.J., but placement was delayed because the county child welfare agency was not diligent in seeking an adjudication from the Family Court, and therefore the expense occasioned by the delay should be borne by the Hospital. The argument misreads our reasoning in *Temple, supra.*

Even should the child welfare agency have failed to move as swiftly as it might have in petitioning the court for custody—a question upon which we venture no opinion—its conduct could not be attributed to the Hospital. When, as here, a hospital acts in a proper and timely manner in reporting an instance of suspected child abuse, pursuant to the Child Protective Services Law,[4] thereby setting in motion the procedures by which the child is eventually placed in a foster home, it cannot be faulted for subsequent delays in the child's placement. Only when delay in placement directly results from a hospital's failure to inform DPW of the need for future placement will DPW be justified in withholding reimbursement under Sections 9421.521(c) and 9421.532 of its regulations.

Since in this case "the culpability of the hospital for the particular misutilization involved cannot be

---

[4] *See* note 1.

established," *Temple, supra,* DPW abused its discretion in denying benefits for the period between T.J.'s medical recovery and her placement in a foster home, *i.e.,* December 21 and January 4.

Accordingly, we

ORDER

AND Now, this 27th day of April, 1977, the adjudication and order of the Department of Public Welfare is reversed. The Department is hereby ordered to reimburse St. Christopher's Hospital for Children for custodial care rendered to the infant T.J. for the period December 21, 1972 to January 4, 1973.