Temple University of the Commonwealth System of Higher Education and the Hospital Association of Pennsylvania, on Behalf of Itself and Themselves and all Other Similarly Situated, Plaintiffs v. Pennsylvania Department of Public Welfare and Frank S. Beal, Secretary, Pennsylvania Department of Public Welfare, Defendants.

Argued March 9, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Spencer G. Hall, Jr.,* with him *James H. Stewart, Jr.; Nauman, Smith, Shissler & Hall; Matthew M. Strickler;* and *Ballard, Spahr, Andrews & Ingersoll,* for plaintiffs.

*Robert E. Rains,* Deputy Attorney General, with him *Jeffrey G. Cooper,* Deputy Attorney General, *Jack G. Handler,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY PRESIDENT JUDGE BOWMAN, June 17, 1977:

In *Department of Public Welfare v. Temple University,* 21 Pa. Commonwealth Ct. 162, 343 A.2d 701 (1975) (*Temple I*), this Court held, *inter alia,* that the then existing regulations of the Department of Public Welfare (Department) contained in the Medical Assistance Manual (Manual) did not empower the Department to deny reimbursement to hospitals participating in the Medical Assistance Program for inpatient hospital care provided to eligible individuals during extended stays caused by a hospital's inability to transfer a patient to a medically suitable lesser care

facility regardless of the availability of such lesser
care facility. We said:

> [I]t would be an abuse of administrative dis-
> cretion to deny reimbursement to hospitals
> which have diligently put forth every effort to
> locate, without success, an appropriate lesser
> care facility. . . . In such circumstances there
> is still a medical necessity for the hospital ser-
> vices. To hold otherwise would be to read pen-
> alty provisions into the regulations where the
> culpability of the hospital for the particular
> misutilization involved cannot be established.
> *Clearly this type of penalty would not further*
> *the purposes of the utilization review proce-*
> *dure.* (Emphasis added.)

*Temple I, supra,* 21 Pa. Commonwealth Ct. at 166, 343
A.2d at 704.[1]

After our decision in *Temple I*, the Department, by
a memorandum dated January 1, 1976, notified hos-
pitals with which it had contracted to provide care
under the Medical Assistance Program that Section
9421.45(b) of the Manual—"Noncompensible Hospital
Care"—was being "revised" so as to expressly pro-
hibit reimbursement in *all* cases of failure to transfer
a patient to a medically suitable lesser care facility
*regardless of the availability of such a facility.*[2]

---

[1] Section 9421.521 of the Manual defined "Misutilization" of
hospital facilities as a failure to transfer a patient to a lesser care
facility when inpatient hospitalization was no longer required.
Section 9421.532 authorized the Director of Utilization of the Bureau
of Medical Assistance to deny reimbursement to a hospital guilty of
such "misutilization."

The contract entered into between the Department and hos-
pitals participating in the Medical Assistance Program requires
hospitals to maintain "agreements" for transfers with alternate
level care facilities as a precondition to receiving reimbursement for
services rendered to indigent patients.

[2] The Department identified this "revision" as minor and as
a "mere statement of existing policy" notwithstanding *Temple I*.

Temple University, operating Temple Hospital, and The Hospital Association of Pennsylvania (Plaintiffs) have brought these unconsolidated class actions invoking our original jurisdiction under Section 401 (a)(1) of The Appellate Court Jurisdiction Act of 1970, Act of July 21, 1970, P.L. 673, *as amended*, 17 P.S. §211.401(a)(1): One in equity, docketed to No. 1171 C.D. 1976, and one seeking a declaratory judgment under the Uniform Declaratory Judgments Act, Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq., docketed to No. 1172 C.D. 1976. Plaintiffs demand that we declare illegal and otherwise enjoin or prohibit implementation of this "revision" of Section 9421.45(b) of the Manual. They allege violations of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1101 et seq., and the equal protection and due process clauses of the United States and Pennsylvania Constitutions, and challenge the statutory authority of the Department to enact this "regulation."

The Department has filed preliminary objections raising the defense of failure to exhaust administrative remedies, a demurrer to counts II through IV of the complaints, (due process, equal protection and lack of statutory authority respectively), and challenging the class action nature of these proceedings.

Four days prior to argument on these preliminary objections, the Department submitted to this Court a "suggestion of mootness" in the nature of a motion to dismiss. The department avers that by a memorandum dated February 4, 1977, the January 1, 1976 revision to Section 9421.45(b) was "deleted" and that by a second memorandum dated March 4, 1977, (a mere four days prior to argument), the Utilization Review Division of the Department was directed to review and process all claims for reimbursement which a hospital submits or has submitted without regard

to the deleted revisions to Section 9421.45(b). This latter memorandum additionally provided: "Should the hospital document that good faith efforts to relocate the patient were done (sic) and that the failure to relocate was not due to the hospital's actions or failure to act, the [Utilization Review Division] should authorize reimbursement."

Plaintiffs respond by charging the Department with attempting to undermine this Court's jurisdiction by the subterfuge of rescinding an illegally adopted and unlawful "regulation" which will be reenacted upon dismissal of these proceedings. We need not and do not pass upon the intent of the Department as to these actions but we do agree that such actions suggest we dispose of this case on the merits.

It is the settled law of this Commonwealth that if at any stage of the judicial process a case is rendered moot, it will be dismissed. *Glen Alden Coal Co. v. Anthracite Miners of Pennsylvania,* 319 Pa. 192, 179 A. 446 (1935); *Janet D. v. Carros,* 240 Pa. Superior Ct. 291, 362 A.2d 1060 (1976). A universally recognized exception to this doctrine is illustrated by those cases in which technically moot issues were decided on the merits because they were of a recurring nature, capable of avoiding review and involved a question of important public interest. *E.g., Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Board,* 340 U.S. 416 (1951); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498 (1911); *Werner v. King,* 310 Pa. 120, 164 A. 918 (1933). It is also recognized that voluntary cessation of allegedly illegal conduct does not moot a case since such a situation would allow the party acting wrongly to revert, upon dismissal of the proceedings, to the offensive pattern of conduct. *United States v. W. T. Grant,* 345 U.S. 629 (1953).

With these exceptions to the mootness doctrine in mind, we proceed. On February 5, 1977, the day after the revision to Section 9421.45(b) was rescinded, there was published at 7 Pa. B. 401, a proposed Department regulation designated Section 9421.75(2) which provides:

> Medical Assistance payments will not be made to hospitals for any costs incurred on behalf of a patient who was admitted for, or whose length of stay in the hospital was prolonged by the following services or reasons.
>
> . . . .
>
> 2. Patient's (sic) awaiting transfer from a hospital to another hospital, a skilled nursing or intermediate care facility or other living arrangements, when hospital-type care is no longer medically necessary, *regardless of whether such facilities are available.* . . . (Emphasis added.)

It is thus obvious not only that recurrence of this dispute is certain, but that the Department did in fact intend and intends to continue the policy that is the subject of these proceedings. We, therefore, dismiss the suggestion of mootness and shall treat the deleted revision of Section 9421.45(b) as if it were a duly enacted regulation still in effect.[3]

The first preliminary objection to which we shall address ourselves is that which is based upon Plaintiffs' failure to exhaust the available administrative remedy provided by the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.1 et seq.

Equity has jurisdiction notwithstanding a failure to pursue an available statutory remedy if that remedy is inadequate. *Collegeville Borough v. Philadel-*

---

[3] We must, however, dismiss the first count of each complaint which alleged violations of the Commonwealth Documents Law.

*phia Suburban Water Co.,* 377 Pa. 636, 105 A.2d 722 (1954); *Metropolitan Hospital v. Department of Public Welfare,* 21 Pa. Commonwealth Ct. 116, 343 A.2d 695 (1975), and, while this Court has expressed reluctance to favor equity jurisdiction over administrative remedies, *Allegheny County, Southern District, Tax Assessment Appeals,* 7 Pa. Commonwealth Ct. 291, 298 A.2d 643 (1972), *rev'd. on other grounds,* 459 Pa. 268, 328 A.2d 819 (1974), it is appropriate to take equity jurisdiction if necessary to avoid a multiplicity of actions. *Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899 (1974). The certainty of renewed litigation upon the final enactment of proposed Section 9421.75(2), the numerous instances in the past in which this policy of the Department has been challenged in this Court,[4] a consideration of time elements, and our interest in judicial economy and in conserving the time and resources of the litigants militate in favor of our taking jurisdiction.

The fact that the letter of January 1, 1976 has been rescinded is not a bar to the granting of equitable relief as that power survives a voluntary cessation of the offensive conduct so long as the right to the remedy is proved and there is demonstrated a danger of recurrence of such conduct that is greater than a possibility. *United States v. W. T. Grant, supra.*

The law is, however, different as to declaratory judgments. Section 6 of the Uniform Declaratory Judgments Act, 12 P.S. §836 provides that relief under the Act is a matter of discretion with the Court but that " [w]here ... a statute provides a special form of remedy for a specific type of case, that statutory

---

[4] A—*Temple I, supra.*

B—*Appeal of Frankford Hospital,* 26 Pa. Commonwealth Ct. 484, 364 A.2d 957 (1976).

C—*Abington Memorial Hospital v. Department of Public Welfare,* No. 2145 C.D. 1976, concluded by settlement agreement dated January 27, 1977.

remedy must be followed. . . ." In *Friestad v. Travelers Indemnity Co.*, 452 Pa. 417, 306 A.2d 295 (1973), our Supreme Court reviewed the morass of cases interpreting this provision and specifically held that while adequate alternate remedies are a factor to be considered by the court in exercising its discretion as to whether the action will lie, if a remedy is specifically provided by statute it *must* be followed. In the context of this declaratory judgment proceeding, the Administrative Agency Law is the exclusive remedy and must be utilized. *Gold v. Department of Public Instruction*, 16 Pa. Commonwealth Ct. 247, 328 A. 2d 559 (1974).

We turn next to the challenge to the class action nature of these proceedings. The principal requirements for the maintenance of a class action have been variously described as numerosity, a commonality of interest between the representative Plaintiffs and the class members in order to insure adequate representation, and a demand for relief common to all class members. *See Metropolitan Hospital v. Department of Public Welfare, supra; Oas v. Commonwealth*, 8 Pa. Commonwealth Ct. 118, 301 A.2d 93 (1973). There is no clear test of numerosity, but it is proper for the Court to inquire whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the Court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually. *Metropolitan Hospital v. Department of Public Welfare, supra.* Such is the case in these proceedings as Plaintiffs claim to represent a class composed of well over one hundred twenty-three individual hospitals. We also deem satisfied the tests of commonality of interest and adequate representation and point out both that we are not here faced with determining individual claims and that common questions of law and fact are not prerequisites to suit under Pa. R.C.P. No. 2230.

The Department's next challenge is to the standing of The Hospital Association of Pennsylvania because of its trade association characteristics. In *Pennsylvania Barber Schools, Inc. v. Alfano,* 18 Pa. Commonwealth Ct. 54, 57 n.1, 333 A.2d 834, 836 (1975), we cited *California Bankers Association v. Schultz,* 416 U.S. 21, 44-45 (1974) for the proposition that while an "association's" standing in a class action brought to challenge a regulation affecting its members *may* be questionable, if an affected member of the association is joined so that it would not avoid resolution of the action on the merits to strike the association, we will assume, without deciding, that the association has standing. *See also, Boston Stock Exchange v. State Tax Commission,* 45 U.S.L.W. 4093 n.3 (1977).

The Department also challenges the standing of Plaintiffs on the ground that if a wrong has been or will be committed by a revised Section 9421.45(b), such wrong will be to the indigent patients of those hospitals denied reimbursement so that only such patients may bring suit. Pa. R.C.P. No. 2002 requires all actions to be brought in the name of the real party in interest. The draftsmen's note to the rule makes it clear that this includes subrogees. We are of the view that the hospitals which have contracted with the Department to participate in the Medical Assistance Program to provide care to the indigent are subrogated to the claims of those individuals for medical care and that such right takes the form of reimbursement payments. *See* 42 U.S.C. §1396a et seq.

Defendants' remaining preliminary objections are in the nature of demurrers to those counts of the complaint based upon due process, equal protection and lack of statutory authority.

Turning first to that count stated in due process, we must sustain the preliminary objection. Plaintiffs argue that the Commonwealth has a duty to provide

medical care for the indigent and that it is attempting to discharge this duty by appropriation of hospital property without due process.

In *Temple I*, in upholding the constitutionality of a sixty day limitation on reimbursement payments, we held:

> The fact is that Temple entered into a contract with the Commonwealth and expressly agreed to the 60-day limitation condition. It is true that Temple may not have been able to bargain over this particular term but it surely assessed the benefits it might reap from entering into this contract, considered the potential liabilities . . . and concluded that on balance participation in the medical assistance program was to its advantage. There is nothing in the law which would prohibit the parties from agreeing upon such an exchange of consideration. (Citations omitted.)

21 Pa. Commonwealth Ct. at 169, 343 A.2d at 705. Of course, the prohibition on reimbursement with which we are here concerned was not included in the contract signed by the hospitals, and Plaintiffs have only vaguely hinted at an argument based upon contract rights. The rationale of *Temple I* nevertheless applies due to paragraph 15 of the contract under the heading "Hospital Responsibilities," which binds hospitals to subsequently enacted regulations subject to an election on the part of the hospital to terminate the contract.

We cannot, however, apply this rationale to the demurrer to the count stated in equal protection as in this instance we are concerned with rights of the patients to which Plaintiffs are subrogated—rights which Plaintiffs cannot be said to have waived by the contract.

What the Department seeks to do is to create a category of patients which it will treat differently

from all others who are eligible for assistance under the Medical Aid Program. Specifically, that class would consist of patients who require medical care of a nature that warrants treatment in a so-called lesser care facility, but who remain hospitalized because of a lack of facilities to which to transfer them.

The United States Supreme Court has established as the test of constitutionality in equal protection challenges to classifications such as this the "rational relationship" test which "calls for a serious and genuine judicial inquiry into correspondence between the classification and the legislative goals" sought to be achieved. *Dorrough v. Estelle,* 497 F.2d 1007, 1011 (5th Cir. 1974) ; *Hagans v. Lavine,* 415 U.S. 528 (1971). Defendants' argument in support of the demurrer to this count is based primarily upon the lack of standing arguments previously rejected. No effort is made by them to justify the classification they seek to create, and we do not at present decide the issue. *See Shapiro v. Thompson,* 394 U.S. 618, 633 (1969). Accordingly, the preliminary objection to this count is overruled.

The demurrer to count IV of the complaint—challenging the Department's statutory authority to promulgate this regulation—is directed solely to the standing of Plaintiffs. No effort is made to refute Plaintiffs' assertion that this regulation conflicts with the policy underlying the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §401. Accordingly, this preliminary objection is overruled.[5]

---

[5] In *Temple I,* we held that the sixty day limitation on reimbursement payments did not conflict with federal regulations because those regulations specifically contemplated benefits limited in both duration and amount. 45 C.F.R. 249.10(a)(5)(i). The distinction here, however, centers on type and quality of care and on this point the federal regulations are less clear. *See, e.g.,* the proviso to 45 C.F.R. 249.10(b), which imposes limits upon the power of the Department to transfer patients which must also include a limita-

ORDER

Now, July 1, 1977, it is hereby ordered that our Order of June 17, 1977 is modified and as modified is set forth in its entirety as follows:

1. The complaint in declaratory judgment docketed to No. 1172 C.D. 1976 is hereby dismissed.

2. The suggestion of mootness is hereby dismissed.

3. Count I of the complaint in equity docketed to No. 1171 C.D. 1976 is hereby dismissed as moot.

4. The preliminary objections to count II of the complaint in equity are hereby sustained and said count is dismissed.

5. All other remaining preliminary objections are overruled.

6. Defendants shall file and serve an answer to the remaining counts of the complaint in equity docketed to No. 1171 C.D. 1976 within thirty (30) days of the date of this modified Order.

---

tion on terminating benefits for failure to transfer if such failure is for medical reasons. For example, while it may be medically appropriate to transfer an inpatient to a lesser care facility, if no such facility is available, the alternative to continued hospitalization may be discharge which may not be medically appropriate.