## Braun v. Wal-Mart Stores Inc.

*Keneth J. Ignozzi, Michael D. Donovan* and *David A. Searles,* for plaintiffs.

*Morton F. Daller, Martin J. Durso, Hilary Ellen Cohen, Christina D. Saler, Brian P. Flaherty, Andrew A. Chirls, Matthew A. White* and *Timothy J. Lynch,* for defendant.

BERNSTEIN, *J.,* December 27, 2005—Plaintiffs individually, and on behalf of similarly situated employees and former employees of defendant, bring this lawsuit for damages resulting from alleged missed rest and meal breaks and mandated "off-the-clock" work in defendant's Pennsylvania stores. Plaintiffs bring contractual claims, claims for unjust enrichment and, in the Hummel case, statutory claims pursuant to the Pennsylvania Minimum Wage Act, 43 P.S. 333.101 et seq. and the Pennsylvania Wage Payment and Collection Act, 43 P.S. 260.1 et seq. The sole issue presently before this court is whether the prerequisites for certification are satisfied. The purpose behind class action lawsuits is "to provide a means by which the claims of many individuals could be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that would otherwise be too small to litigate." *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 397, 676 A.2d 1237, 1239 (1996). For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

Rule 1708 of the Pennsylvania Rules of Civil Procedure requires:

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought, the court shall consider

"(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class. . . .

"(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)."

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that decisions in favor of maintaining a class action should be liberally made." *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637 (1985). The moving party needs only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met." *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002) (quoting *Janicik v. Prudential Insur-*

*ance Co. of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982)).

In other contexts, the prima facie burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the prima facie standard requires evidence of the existence of each and every element." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa. Super. 1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999). However, "The weight and credibility of the evidence are not factors at this stage." *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001).

In the family law context, the term " 'prima facie right to custody' means only that the party has a colorable claim to custody of the child." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa. Super. 2000). Similarly, in the context of employment law, the Commonwealth Court has opined that a prima facie case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence. See *e.g., Williamsburg Community School District v. Commonwealth, Pennsylvania Human Rights Commission,* 99 Pa. Commw. 206, 512 A.2d 1339 (1986).

Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion." *SSEN Inc. v. Borough Council of Eddystone,* 810 A.2d 200, 207 (Pa. Commw. 2002). In *Grakelow v. Nash,* 98 Pa. Super. 316 (1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be prima facie evidence of a fact

means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; . . . it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

Class certification is a mixed question of fact and law. *Debbs v. Chrysler Corp.,* 810 A.2d at 154 (Pa. Super. 2002). The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration. 1977 Explanatory comment to Pa.R.C.P. 1707. Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions and judicial notice." *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454-55. Accordingly, this court must refrain from ruling on plaintiff's ultimate right to achieve any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden." *Professional Flooring Co. v. Bushar Corp.,* 61 D.&C.4th 147, 153 (Montg. Cty. 2003), citing *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002); *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982). See also, *Baldassari v. Suburban Cable TV Co.,* 808 A.2d 184, 189 (Pa. Super. 2002); *Cambanis v. Nationwide Insurance Co.,* 348

Pa. Super. 41, 501 A.2d 635 (1985). The prima facie burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test. The burden of persuasion and the risk of non-persuasion, however, rest with the plaintiff.

Our Superior Court has instructed that it is a strong and oft-repeated policy of this Commonwealth that decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech-Nut Nutrition Corporation,* 419 Pa. Super. 403, 410, 615 A.2d 428, 431 (1992). See also, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454, citing and quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action").

Likewise, the Commonwealth Court has held that "in doubtful cases any error should be committed in favor of allowing class certification." *Foust v. SEPTA,* 756 A.2d 112, 118 (Pa. Commw. 2000). This philosophy is further supported by the consideration that "[t]he court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." *Janicik,* 305 Pa. Super. at 129, 451 A.2d at 454.

Within this context, the court will examine the requisite factors for class certification.

## I. NUMEROSITY

To be eligible for certification, appellant must demonstrate that the class is "so numerous that joinder of all members is impracticable." Pa.R.C.P. 1702(1). A class is sufficiently numerous when "the number of potential

individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should . . . plaintiffs sue individually." *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Co. v. Bell of Pa.,* 293 Pa. Super. 219, 224, 438 A.2d 616 (1981) (250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pa.,* 291 Pa. Super. 40, 50 n.5, 435 A.2d 208, 214 n.5 (1981) (204 plaintiffs sufficiently numerous). Appellant need not plead or prove the actual number of class members, so long as he is able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456. These actions potentially involve 150,000 class member employees and former employees of defendant's 130 stores in Pennsylvania. Clearly, numerosity has been demonstrated.

## II. COMMONALITY

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Pa.R.C.P. 1702(2). Common questions exist "if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Janicik, supra,* 305 Pa. Super. at 133, 451 A.2d at 457. Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all." *Weismer by Weismer v. Beechnut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). How-

ever, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist. *Janicik, supra,* 305 Pa. Super. at 133, 451 A.2d at 457.

"While the existence of individual questions is not necessarily fatal, it is essential that there be predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 452, 500 A.2d 1137, 1142 (1985). In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of damages among the plaintiffs will not preclude class certification." See *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). Where there exists intervening and possibly superseding causes of damage, however, liability cannot be determined on a class-wide basis. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 231 n.5, 530 A.2d 499, 504 n.5 (1987).

Related to this requirement for certification is whether trial on a class basis is a fair and efficient method of adjudication under the criteria set forth in Rule 1708. In addition to the existence of common questions of law and fact, plaintiffs must also establish that the common issues predominate. Accordingly, the analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janicik, supra,* 305 Pa. Super. at 142, 451 A.2d at 461.

Plaintiff proposes to certify a class for trial as follows: "All current and former hourly employees of Wal-Mart

in the Commonwealth of Pennsylvania from March 19, 1998 to the present." In support of their claim, plaintiffs present expert analysis of defendant's own computer records of employee time and activity. Plaintiff relies upon the expert opinion of Dr. L. Scott Baggett, a highly qualified consulting statistician, the opinion of Martin M. Shapiro, a highly qualified psychologist and researcher at Emory University, with significant experience in the application of the statistical quantification of measurement operations, each of whose reports are of record and the "Shipley Audit," an analysis performed for management purposes by defendant. All expert analyses relied upon defendant's own computer records maintained in the regular course of their business for business purposes, namely to determine the pay earned by hourly employees. These computer records are mandated by law, including the Pennsylvania Minimum Wage Act of 1968 which states: "Every employer of employees shall keep a true and accurate record of the hours worked by each employee and the wages paid to each. . . ."

The defendant's business record, the "Time Clock Archive Report," records the "total hours worked" and "total breaks" for every employee for every shift worked. The defendant's own records, the "Time Clock Punch Exception Report," lists missed or inadequate breaks. These reports have been utilized and relied upon by defendant management for payroll and evaluation purposes. The same reports were relied upon and analyzed by plaintiffs' experts.[1]

---

1. Even though the defendant relied upon these records, which are mandated by law to determine associate's pay, defendant claims that their employment records are inaccurate and may not be relied upon. While this defense may be persuasive at trial, for purposes of this

Defendant claims to have an unalterable written policy of providing all employees, and therefore all putative class members, with all mandated rest and meal breaks. This policy, applicable to all employees, incorporated in "PD-07," requires that all "work associates" receive one paid rest break of 15 minutes during any three-hour work period, and two paid 15 minute rest breaks and one unpaid meal break of 30 minutes over a six-hour work period. Defendant further claims to have an unalterable written policy incorporated into "PD-43" that no associate "should perform work for the company without compensation" and that no supervisor may request or require any associate to work without compensation. The defendant is mandated by law in Pennsylvania to advise every employee of the wage payments and "fringe benefits" to which they are entitled.[2]

Dr. Baggett examined management reports from March 1998 to December 2000 for 12 stores in Pennsylvania. Based upon an analysis of 23,919 individual shifts covering 2,250 individual associates, Dr. Baggett concluded that 17,556 or 64.4 percent of the shifts contained deficiencies in duration of rest and meal breaks, and 10,889 or 40 percent of the workers did not receive the appropriate number of breaks. As to plaintiff Hummel herself, Dr. Baggett found 35.8 percent of her breaks were deficient in duration and 28.3 percent deficient in number.

These findings for Pennsylvania stores by plaintiff's retained expert are consistent with defendant's internal audit performed in June 2000. After studying the com-

---

preliminary procedural certification decision, the court accepts these business records as prima facie accurate.

2. 43 P.S. 260.4, actual notification is not required since posting is sufficient for compliance.

puter "exception reports" in 127 stores nationally, including five stores in Pennsylvania, the defendants Internal Audit Division found "Stores were not in compliance with company and state regulations concerning the allotment of breaks and meals, as 76,472 exceptions were noted in 127 stores reviewed for a one-week period." Seventy-five percent of these missed breaks concerned rest breaks; 25 percent concerned missed meal breaks. The defendant's own internal management analysis revealed that an average of 2 breaks per associate per week were either missed or shorted at every store. The internal audit's findings concerning the Pennsylvania stores actually revealed greater deficiencies than Dr. Baggett's conclusions.

Other computer records were also analyzed by plaintiff's experts. Defendant databases record time associates spent on other electronic devices such as cash register and computer-based learning terminals. Plaintiff's expert Dr. Shapiro compared this database with time records and determined that, while associates were recorded as taking breaks, they were also recorded as being engaged in employment-related activities.[3] Clearly,

---

3. Although plaintiff continues to argue in memoranda that the reports of experts John Zogby and Dr. Thompson demonstrate that a random sampling survey of class members can "provide a valid means to determine the uncompensated off-the-clock time of the class of employees," this contention is nonsense. These expert opinions, which were officially stricken in the Hummel matter pursuant to the order granting defendant's *Frye* motion, have been rejected as providing no assistance whatsoever in the Braun matter. These expert "opinions" about the reliability of unsworn and untested recollections expressed anonymously by former employees in a telephone interview years after the event provide no methodology whatsoever, no analysis whatsoever and no reason whatsoever to believe that these self-serving,

should the jury conclude that this evidence meets plaintiff's burden of proof at trial and demonstrates to a preponderance of the evidence systemic violations of contractually required unalterable corporate policy as to breaks and payment for time worked, plaintiff will have proven its statutory claims, its contractual violations and that the defendant has been "unjustly enriched." Clearly, common questions as to the failure to provide rest and meal breaks, and whether the class members have been actually compensated for all time worked, predominate.

While plaintiff offered the testimony of employees in support of these expert conclusions, the court relies primarily on the expert analysis of computer records to conclude that the systemic loss of contractual break and meal time in Pennsylvania stores has been prima facie demonstrated. It thus becomes a factual determination as to why these statistically significant demonstrated discrepancies between the recorded time records and unalterable company policy exists. The defendant has offered deposition testimony to explain reasons for the inaccuracy of the time records. Since credibility may not be the focus of a certification decision, the court merely notes that the discrepancies in testimony will undoubtedly be an issue for jury determination at trial.[4]

The class action certification rules explicitly permit the use of deposition testimony. Common practice in class action certification proceedings discourages or even forecloses live witness or videotape deposition testimony,

---

self-interested hearsay results will in any way comport with historical reality, or even be arguably admissible in evidence under Pennsylvania law.

4. The court notes that the statutory requirements cannot be waived by agreement. See 43 P.S. 260.7 and 43 P.S. 333.113.

specifically because credibility is generally not an issue. Every jury, however, which must evaluate credibility is instructed that they should observe how each witness acts, speaks and looks while testifying, because observation is so important to their final evaluation. Our Supreme Court even mandates that the court specifically caution jurors not to allow note taking to distract them from the important task of observing each witness. Although this court was offered a few carefully selected snippets of videotaped deposition testimony, it is certainly improper to decide credibility on this basis. Neither would it be proper to deny certification because this court concluded that the plaintiffs have not proven their case to the satisfaction of the court sitting as if conducting a non-jury trial. One need only recall the symbolic placement of the middle finger of captured crew members of the USS Pueblo in photographs displayed by their North Korean captors, along with their "confessions," to recognize the need to observe all the testimony of current employees testifying under their employer's watchful eye that they voluntarily worked off-the-clock without pay because of their devotion to the ideal of corporate profitability through customer satisfaction.

It is unusual in the extreme for the defendant, who relies on their records for business purposes, to contend that although required by law to be created and maintained, their records are so unreliable that they cannot constitute prima facie proof of their contents. Since 1939, the Business Records Act, 42 Pa.C.S. 6108, allowed business records into evidence without any actual proof of their accuracy because the law presumed the regularity and accuracy of records maintained in the regular course of business. The purpose of the legislatively enacted stat-

ute is the same as that of the Supreme Court-adopted Rule 803(6) of the Pennsylvania Rules of Evidence. Records created and maintained for independent business purposes are not self-serving or created for litigation. As stated by the Supreme Court in *Williams v. McClain,* 513 Pa. 300, 305, 520 A.2d 1374, 1376 (1987): "[t]he basic justification for the business record exception to the hearsay rule is that the purpose of keeping business records builds in a reliability which obviates the need for cross-examination." Because important business decisions routinely depend upon the accuracy of regularly kept records, they are admissible and constitute prima facie proof of their contents, whether offered by their creator or an antagonist. Without question, a party opponent's business records may be offered against their creator, are prima facie proof of their contents and may even constitute opposing party admissions against pecuniary interest. The presumption of the reliability of business records which are created and maintained by affirmative requirement of law and are utilized for payroll purposes is beyond question.

It will be plaintiff's burden at trial to demonstrate culpability. The computer records demonstrate the existence of common questions of law and fact, and that common issues predominate. Indeed, for those class members for whom computer records exist,[5] the computation of damages, should a liability verdict be obtained, can be easily determined by claim presentation of the computer results.

---

5. The court notes that while litigation in many states was pending in February 2001, defendant decided that rest break data should no longer be maintained by computer record.

The plaintiffs have proven the requirement of commonality.

## III. TYPICALITY

The claimants must also meet the requirement of typicality. The third step in the certification test requires the plaintiff to show that the class action parties' claims and defenses are typical of the entire class. The purpose behind this "requirement is to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members, to ensure that the pursuit of their interests will advance those of the proposed class members." *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 404, 676 A.2d 1237, 1242 (1996).

Plaintiffs were employed in Pennsylvania stores for many years. Both claim that they were forced to work off-the-clock during missed break and lunch periods. Plaintiff Hummel's claim is supported by an analysis of defendant computer records which demonstrated that during a two-week period in March 1999, 19 out of 53 shifts worked were deficient in duration of breaks and 15 of 53 shifts were deficient in the number of rest and meal breaks. Plaintiff Braun's individual computer record also demonstrates missed breaks.

Defendant contends that these "disgruntled" employees are not representative. The computer records belie this contention; the analysis reveals significant break time lost. Regardless of how disgruntled they or other employees who believe they have been forced to work off-the-clock without pay may be, their interests are sufficiently aligned with the interests of the entire class.

The court finds that the claim presented satisfies the typicality requirement of Rule 1702(3).

## IV. ADEQUACY OF REPRESENTATION

For the class to be certified, this court must also conclude that the plaintiffs "will fairly and adequately assert and protect the interests of the class." Pa.R.C.P. 1702(4). In determining whether the representative parties will fairly and adequately represent the interests at the class, the court shall consider the following:

"(1) whether the attorney for the representative parties will adequately represent the interests of the class,

"(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

"(3) whether the representative parties have or can acquire financial resources to assure that the interests of the class will not be harmed." Rule 1709.

"Until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. "Courts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458.

The court is familiar with the class action work of local counsel, including the successful class action trial to verdict and personally knows that the firm consistently performs at the highest level of professional competence and professionalism. Pro hac vice counsel has also demonstrated tenacity, diligence and competence in representing this class. The adequacy of representation require-

ment of Rule 1702(4) has been met. The court has considered defendant's claims of conflict among class members and finds them deficient to defeat the demonstrated adequacy of representation by counsel and the named class representatives.

## V. FAIR AND EFFICIENT METHOD OF ADJUDICATION

The final criteria under Pa.R.C.P. 1702 is a determination of whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Since the court has determined that a class satisfies the other requirements of Pa.R.C.P. 1702, and plaintiffs do not request equitable relief, it is not necessary to consider subdivision (b) of Rule 1708.

### 1. *Predominance of Common Questions of Law and Fact*

The most important requirement in determining whether a class should be certified under Rules 1702(5) and 1708(a)(1) is whether common questions of law and fact predominate over any question affecting only individual members. In addition to demonstrating the existence of common questions of law and fact, plaintiffs must also establish that common issues predominate. The analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janicik, supra,* 305 Pa. Super. at 141, 451 A.2d at 461. The court adopts and incorporates its analysis of commonality and concludes that the requirement of predominance has been satisfied. The difficulties plaintiff

class may encounter in proving liability for the time period after specific work activity computer record-keeping was ceased by the defendant's decision, does not change the common nature of the allegations to be proven. Plaintiffs may be able to demonstrate consistency in corporate conduct despite a change in corporate record-keeping. Plaintiff may fail in its proofs for the time after detailed record-keeping ceased. Nonetheless, common issues of triable fact and law predominate. The eventual verdict need not be predicted before certification is ruled upon.

## 2. *The Existence of Serious Management Difficulties*

Under Pa.R.C.P. 1708(2), a court must also consider the size of the class and the difficulties likely to be encountered in the management of the action as a class action. While a court must consider the potential difficulties in managing the class action, any such difficulties generally are not accorded much weight. Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action, for to do so would contradict the policies underlying this device. *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972). Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring. *Id.* (citing *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117, 131 (1974)).

Defendants argue that class treatment would not be fair and reasonable since there are individual fact issues which render class treatment unmanageable. However, many of the claims can be easily litigated to both liabil-

ity and damage verdicts without any manageability issues. Plaintiffs contend that at least until defendant's record-keeping policies were changed, their own business records prove both corporate liability and the exact calculation of damage sustained by each class member. The defendant's contention that their records cannot be relied upon and that individualized explanations make these records questionable as proof of liability or damages are questions of fact for jury determination. If either defense is accepted by the jury at trial, plaintiffs will simply fail to meet their burden of proof. The court rejects defendant's contention that thousands of employees will be needed to testify that the time records are inaccurate and do not explain their individual reasons for inadequate breaks and off-the-clock work without pay. If the defense contentions are true, the inaccuracy of mandated records on which the company relied for years can surely be more convincingly demonstrated than through rote employee testimonials of company loyalty. The court knows that such testimony is routinely rejected by jurors and is confident that experienced defense counsel would never present a case to a jury in such an amateur and ultimately dysfunctional manner.

Should the jury determine that these records do demonstrate liability and have accurately recorded missed breaks, meals and other off-the-clock work, then damages for each class member becomes a ministerial calculation. Specifically tailored jury verdict interrogatories or bifurcation may be required for the time period after the defendant changed its recording policies, but the need for such distinctions in verdict interrogatories or even bifurcation are certainly manageable trial issues. The court is confident that such individualized issues of com-

putation or payment of damages that may eventually exist, should plaintiff prevail on their overriding common issues, can be justly resolved by any one or combination of a number of common management tools. Whatever management problems remain, this court is confident that the ingenuity and aid of counsel can justly resolve in accord with this certification decision. *Janicik,* 305 Pa. Super. at 142, 451 A.2d at 462.

### 3. *Potential for Inconsistent Adjudications*

Pennsylvania Rule 1708(a)(3) also requires a court to evaluate whether the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. In considering the separate effect of actions, the precedential effect of a decision is to be considered, as well as the parties' circumstances and respective ability to pursue separate actions. *Janicik,* 305 Pa. Super. at 143, 415 A.2d at 462.

A substantial risk of inconsistent adjudications exists if individual actions are pursued in these cases. As a certified class, one case will determine liability, a multiplicity of litigation is rendered unnecessary and the potential for inconsistent adjudications is avoided.

### 4. *Extent and Nature of Any Preexisting Litigation and the Appropriateness of This Forum*

Under Pa.R.C.P 1708(a)(4) and (a)(5), a court should consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues. Although preexisting litigation raising the same issues has been filed in many states,

the court is aware of no conflicting litigation concerning the Pennsylvania plaintiffs in the certified class. This court finds that this forum is appropriate to litigate the claims presented. The Court of Common Pleas of Philadelphia County Complex Litigation Center has achieved a well-earned national reputation for excellence in the expeditious and just case management and trial of complex mass tort and class action matters. This is an appropriate forum for this class action concerning Pennsylvania stores and employees.

### 5. *The Separate Claims of the Individual Plaintiffs Are Insufficient in Amount To Support Separate Claims or Their Likely Recovery*

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class action. Thus, a court must analyze whether in view of the complexities of the issues or the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate amounts. Pa.R.C.P. 1708(a)(6). Alternatively, the rules ask the court to analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action. Pa.R.C.P. 1708(a)(7). This criteria is rarely used to disqualify an otherwise valid class action claim. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215, 546 A.2d 608, 609 (1988). (Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.)

Although the amounts vary and may be small, if any sums are owing to class members, at least as to those claims proven by defendant's own records, administration is simple and straightforward. For most, if not all class members, the amounts involved in comparison to the substantial litigation necessary for recovery effectively means that no individual litigation could ever be pursued.

This criteria is met.

### 6. *Appropriateness of Equitable or Declaratory Relief*

Since plaintiffs do not seek equitable relief, it is not necessary to consider the criteria set forth in Pa.R.C.P. 1708(b).

Having weighed the Rule 1702 requirements, this court finds that a class action is a fair and efficient method for adjudicating plaintiff's claim and an appropriate order is issued herewith.

## CONCLUSIONS OF LAW

(1) The class is sufficiently numerous that joinder of all its members would be impracticable.

(2) There are questions of law and fact common to the class.

(3) The claims of plaintiff are typical of the class claims.

(4) Plaintiffs will fairly and adequately assert and protect the interests of the class.

(5) Allowing class claims provides a fair and efficient method for adjudication of the criteria set forth in Pa.R.C.P. 1708.

## CONCLUSION

For these reasons, plaintiffs' motion for class certification is granted. Plaintiffs' counsels are appointed as counsel for the class. The parties shall submit proposals for a notification procedure and proposed forms of notice for class members within 30 days from the date of this order. Discovery for trial shall commence. A new case management order shall be issued.

A contemporaneous order consistent with this opinion is filed.

## ORDER

And now, December 27, 2005, it is hereby ordered and decreed that plaintiffs' motion for class certification is granted. Plaintiffs' counsels are appointed as counsel for the class. The parties shall submit proposals for a notification procedure and proposed forms of notice for class members within 30 days from the date of this order. Discovery for trial shall commence. A new case management order shall be issued.