Morgan KEPPLEY, individually and on behalf of all others similarly situated, Appellant,

v.

SCHOOL DISTRICT OF TWIN VALLEY, Pennsylvania; George Krapf Jr. & Sons, Inc.; Eshelman Transportation, Inc.; Gary McEwen; Paul Oldham; Daniel Dierksheide; Lisa Giordano; John Prinzo; John Manidis; Norman Rhoads; David McElhenny; Anne Tunbridge; and Jeffrey Ploppert.

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided Jan. 25, 2005.

Simon T. Grill, Reading, for appellant.

Andria B. Saia, Huntingdon Valley, for appellee, George Krapf Jr. & Sons, Inc.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Morgan Keppley appeals from the March 25, 2004 order of the Court of Common Pleas of Berks County (trial court) that denied her motion for class certification.[1] In a civil action filed October 15, 2001, Keppley seeks damages against the School District of Twin Valley (School District); George Krapf, Jr. and Sons, Inc. (Krapf); Eshelman Transportation, Inc. (Eshelman); members of the Twin Valley School Board (School Board)[2] and Jeffrey Ploppert, District Operations Director for the School District (collectively, Defendants) for violations of the Pennsylvania Wire Tapping and Electronic Surveillance Act (Act),[3] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511 (Title III),[4] and 42 U.S.C.

1. Although an order denying class certification is no longer appealable as a final order under Pa. R.A.P. 341, the Superior Court determined in *DiLucido v. Terminix Int'l, Inc.* 450 Pa.Super. 393, 676 A.2d 1237 (1996), that such an order is appealable as a collateral order under Pa. R.A.P. 313.

2. The School Board members named as Defendants in this matter are Gary McEwen, Paul Oldham, Daniel Dierksheide, Lisa Giordano, John Prinzo, John Manidis, Norman Rhoads, David McElhenny and Anne Tunbridge.

3. 18 Pa.C.S. §§ 5701–5775. Specifically, Section 5703 of the Act, 18 Pa.C.S. § 5703, provides:

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know,

that the information was obtained through the interception of a wire, electronic or oral communication.

Section 5725 of the Act, 18 Pa.C.S. § 5725, authorizes a civil action by any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of the Act. Damages are limited to (1) actual damages, but not less than liquidated damages computed at the rate of $100 a day for each violation, or $1,000, which ever is higher, (2) punitive damages and (3), a reasonable amount of attorney's fees and other costs of litigation reasonably incurred. *Id.*

4. Section 2511 of Title III provides, in relevant part, as follows:

Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through a wire, cable, or other like connection used in wire communication;

. . .

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of

§ 1983. For the reasons that follow, we affirm.

Keppley alleged in her complaint that she was a student at Twin Valley High School for the years 1996–2000. During that time, the School District had contracts with Krapf and Eshelman for the transportation of students to and from school by way of buses. At some point in time, the School District approved the installation of two "bus cam" electronic surveillance systems on the school buses that transported students within the district. By October 2001, each bus was equipped with a bus cam cover, which had a red light that was illuminated when the bus engine was started regardless of whether a bus cam was actually installed on the bus; the bus cams were rotated among the fleet of buses. The bus cams had a one-way mirror that enabled the cam to visually record activity on the buses.

Additionally, Keppley alleged that in March of 1996, the School District purchased two electronic surveillance devices which fit into the bus cam covers, namely, a Sony 8 mm CCD–TR 28 and a Nikon Action 8 VN–200. These devices were able to acquire the contents of conversations, aural transfers and oral communications and then record them. The School District did not notify the students that their activity and/or oral conversations were capable of being recorded nor did

they obtain a court order to record student conversations.

Keppley alleged that the School District disclosed the contents of the visual and audio tapes in disregard of the students' right to privacy and used them in disciplinary proceedings. Keppley alleged that the School District attempted to use the contents of an intercepted conversation between her and another student for disciplinary purposes,[5] that she had a reasonable expectation in the privacy of that communication, and that she had a reasonable expectation that her conversations would not be intercepted by Defendants.

Keppley's complaint set forth 30 causes of action, summarized as follows: Counts I through XIX alleged that Defendants violated the Act; Counts XX through XXI alleged that the School District violated Title III; Counts XXII through XXIV alleged that Krapf and Eshelman were negligent in the supervision of their employees and of the instrumentalities under their control; Count XXV alleged that all Defendants engaged in a civil conspiracy in violation of the Act and Title III; Count XXVI alleged that Defendants violated Keppley's civil rights in violation of 42 U.S.C. § 1983; Counts XXVII through XXIX alleged that Defendants invaded Keppley's right to privacy; and finally, Count XXX alleged a class action in favor of similarly-situated students.

---

any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection....

. . . .
shall be punished as provided in subsection (4)[relating to fine or imprisonment] or shall be subject to suit as provided in subsection (5)[relating to action by the federal government].

5. Keppley, however, was not subject to any disciplinary proceedings based on her conduct and/or conversation occurring on the school bus.

In Count XXX, Keppley alleged that (1) she was bringing the lawsuit on behalf of all similarly-situated persons who were passengers on the school buses owned or controlled by Defendants while the buses were equipped with electronic surveillance devices; (2) there were in excess of 100 potential plaintiffs who were subjected to Defendants' unlawful conduct; (3) the school buses were used to transport students and non-students to and from events which may or may not have been related to school activities; (4) the electronic surveillance equipment may have been used to unlawfully audiotape both students and non-students that were transported on the buses; (5) Keppley was authorized to bring the action on behalf of herself and all others similarly situated since joinder of all potential plaintiffs was impracticable; (6) there were common questions of law and fact to the class; (7) Keppley's claims and defenses are typical of the class inasmuch as her injuries arose from the same course of conduct and were premised on the same legal theories as those of other potential class members; (8) Keppley could fairly and adequately represent the proposed class; and (9) a class action would be a fair and efficient method of adjudicating the matters at issue.

After the filing of various pleadings and motions, Keppley filed a motion for class certification in which she defined the class to include

> [a]ll persons who rode in Twin Valley school [buses] between on or about March 6, 1996, and August 16, 2001, which contained the Bus Cam electronic surveillance system.

(R.R. 188a) Her proposed class would include up to 1800 individuals.

The trial court held hearings on Keppley's motion for class certification on August 26 and December 29, 2003. By order dated March 25, 2004, the trial court denied Keppley's motion. This appeal followed.[6]

Pennsylvania Rules of Civil Procedure 1701–1716 govern class action lawsuits. Rule 1702, Pa. R.C.P. No. 1702, sets forth the prerequisites to a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709 [pertaining to criteria for certification; determination of fair and adequate representation]; and
>
> (5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708 [pertaining to criteria for certification; determination of class action as fair and efficient method of adjudication].

In determining whether the above criteria have been satisfied, trial courts are vested with broad discretion in making such determinations. *Baldassari v. Suburban Cable TV Co., Inc.,* 808 A.2d 184 (Pa.Super.2002), *appeal denied,* 573 Pa. 694, 825 A.2d 1259 (2003). The burden

---

**6.** A trial court's order denying class certification will not be disturbed on appeal unless the court neglected to consider the requirements of the Rules of Civil Procedure or abused its discretion in applying them. *DiLucido.*

of proof lies with the proponent, but the proponent must only present sufficient evidence to make out a *prima facie* case "from which the court can conclude that the five class certification requirements are met." *Id.* at 189 (quoting *Janicik v. Prudential Ins. Co. of Am.*, 305 Pa.Super. 120, 451 A.2d 451, 455 (1982)).

■ The Federal Rules of Civil Procedure likewise require that the class be numerous, that there be common questions of fact or law, that the claims or defense of the representative party are typical of the claims of the class, and that the representative party will fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a). A prerequisite to a Rule 23 action is the actual existence of a class, which must be sufficiently identifiable without being overly broad. *Reilly v. Gould, Inc.*, 965 F.Supp. 588 (M.D.Pa. 1997).

### Numerosity

■ "A class is sufficiently numerous when 'the number of potential plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should plaintiffs sue individually.'" *Baldassari* 808 A.2d at 190 (quoting *Temple Univ. of the Commonwealth Sys. of Higher Educ. v. Dep't of Pub. Welfare*, 30 Pa.Cmwlth. 595, 374 A.2d 991, 996 (1977)). The proponent must not plead or prove the actual number of class members, so long as she is able to define the class with some precision and provide the court with sufficient indicia that more members

exists than it would be practicable to join. *Id.*

The trial court concluded that under the Act, in order for a conversation to constitute an "oral communication,"[7] the speaker must have a specific expectation that the contents of the discussion would not be intercepted and that the expectation was justifiable under circumstances. Keppley, however, did not identify one person, including herself, who had her oral communications intercepted as that term is defined by the Act and Title III. (Conclusion of Law (C.L.) 14; R.R. 362a)[8] The court further noted that the proper class was not *all* students who ever rode a school bus with a bus cam on board, for that was legally insufficient and overly broad. Rather, the class could only contain those persons whose "oral communications" were electronically recorded. Given this, the trial court concluded that Keppley did not meet the numerosity requirement.

■ Keppley asserts that the trial court erred in determining that she failed to satisfy the numerosity requirement on the basis that she cannot prove that she or any other potential class member's oral communications were intercepted. We agree with Keppley that the Act does not require *actual* interception. In *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519 (1998), the Supreme Court stated that in order to establish a *prima facie* case under the Act for interception of an oral communication, the claimant must show that: (1) he engaged in a communication; (2) he possessed an expectation that the communication would

---

7. The Act defines the term "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication." 18 Pa.C.S. § 5702.

8. Keppley's counsel sent out a survey to past students who rode the School District's buses during the relevant time period. From that survey, only four individuals responded that a tape subjected them to any type of school discipline, investigation or sanction. (C.L.10)

not be intercepted; (3) his expectation was justifiable under the circumstances; and (4) the defendant *attempted to* or successfully intercepted the communication, or encouraged another to do so.

■ Attempted interception, however, is insufficient to establish liability under the Act. The class member must also have exhibited an objectively reasonable expectation of privacy under the circumstances. In *Agnew,* the Supreme Court stated that the proper inquires in determining what constitutes an "oral communication" under the Act include whether the speaker has a specific expectation that the contents of the discussion would not be intercepted and whether that expectation was reasonable under the existing circumstances. In reviewing whether the expectation was reasonable under the circumstances, it is necessary to examine the expectation according to the principles surrounding the right to privacy, "for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy." *Id.* at 40, 717 A.2d at 523. Thus, the trial court would be required to examine whether the person exhibited an expectation of privacy and whether that expectation is one that society is prepared to recognize. *Id.*

As *Agnew* illustrates, there is a need for additional inquiry in deciding whether a person would be a member of the prospective class. The trial court would be required to analyze the circumstances surrounding each prospective class member's presence on the bus to determine if he or she had an objectively reasonable expectation of privacy. Only then could the trial court determine whether the proposed member had a reasonable expectation of privacy. Consequently, the efficiency expected in a class action is thwarted by the need for individualized fact finding for each prospective class member. *See generally Sanneman v. Chrysler Corp.,* 191 F.R.D. 441 (E.D.Pa.2000) (determining a membership in the class would essentially require a mini-hearing on the merits of each class member's case, which in itself renders a class action inappropriate for addressing the claims at issue).

■ In case *sub judice,* Keppley failed to sufficiently define the class absent individualized fact-finding with regard to her Title III action and civil rights claims. In determining whether an individual has a justifiable expectation of privacy, aside from commonalities such as the size of the buses and the bus cams' ranges of reception, the trial court would need to consider the location of each particular student on the bus in relation to the audio equipment and whether each student exhibited an expectation of privacy and whether that expectation was reasonable. These factors would be different for each prospective member. For instance, students yelling on the bus would have a different expectation of privacy as opposed to those students whispering to one another and those conversing in normal voice tones. Likewise, students who sat in the middle or rear of the bus would have a different expectation of privacy than those who sat in the front or by the bus driver. Given that Keppley has tentatively identified 1800 members of her proposed class, the number of individual inquiries needed to make such determinations is inapposite to the expected efficiencies of a class action. Thus, Keppley has failed to define her class with sufficient precision for purposes of a class action under Title III and 42 U.S.C. § 1983.

■ Keppley's claims under the Act, however, do satisfy the numerosity requirement of Pa. R.C.P. No. 1702(1). In *Baldassari,* which suggests a less stringent interpretation of the numerosity requirement under Pa. R.C.P. 1702 than its

federal counterpart, the Superior Court rejected the claim that the proposed class of 60,000 cable subscribers was overly broad because the complainant was unable to identify the total number of individuals who were affected by the cable company's schedule of late fees. In that case, the cable company argued that it would be necessary to delve into the individual circumstances surrounding each customer's payment history.

The Court rejected the argument in part by noting that proof of the payment of late fees was an administrative problem that did not defeat the numerosity requirement. Although the evidence may have been difficult to obtain, the cable company retained numerous boxes of subscribers who paid late fees during the proposed class period.

In the present matter, the School District provided an exhibit identifying to a certain extent when each bus was equipped with the bus cam surveillance system. From that exhibit, the School District may be able to discern which buses were equipped in each year and the students who rode the equipped buses during the proposed class period. As in *Baldassari*, the task of determining which students rode buses equipped with bus cam surveillance systems, while tedious and inconvenient, does not defeat the numerosity requirement but more appropriately addresses future management of the class.

### Commonality

For class certification, Keppley must show her claim presents "questions of law or fact common to the class." Pa. R.C.P. No. 1702(2); Fed.R.Civ.P. 23(a)(2). "The

common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all." *Baldassari*, 808 A.2d at 191 (quoting *Allegheny County Housing Auth. v. Berry*, 338 Pa.Super. 338, 487 A.2d 995, 997 (1985)). "While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must be a *predominance of common issues shared by all class members which can be justly resolved in a single proceeding.*" *Id.* at 191 (quoting *Weismer by Weismer v. Beech–Nut Nutrition Corp.*, 419 Pa.Super. 403, 615 A.2d 428, 431 (1992))(emphasis added).

■ In this case, the trial court determined that there are no common questions of fact that are common to all potential claimants regardless of the size of the class. While we agree with Keppley that there are some common questions regarding the School District's action of purchasing and installing the bus cam surveillance systems,[9] there is a lack of *predominance* of common questions of fact allowing the proof as to one to be proof as to all. For each potential class member, a determination would need to be made as to the following, *inter alia:*

- whether the proposed member was assigned to a bus that had the bus cam system installed. This determination would need to be made for *each year* of the class period inasmuch as not all buses were equipped with the bus cam systems until 2001[10] and because the School District only had two cameras capable of audiotaping. Thus, al-

---

9. *See* R.R. 994a–998a for Keppley's proposed list of 46 common questions. Defendants agree in their appellate brief that, at most, 26 common questions of fact exist as to all potential class members.

10. In other words, a prospective class member may have been assigned to a bus that had the bus cam system installed for the school year 1996–1997 but assigned to a different bus without the surveillance system for the following school year.

though all buses eventually had the bus cam covers installed, only two cameras could be used at any one time.

- whether the proposed member actually rode the school bus on a day when a camera was installed in the bus cam covers. Students often have other methods of transportation to school, including riding with friends, driving, or walking. In fact, Keppley testified that she drove to school during the 1999–2000 school year. At some point, she left school and obtained her GED in 2001.
- where the proposed member typically sat on the bus. Proposed members who sat near the middle or back of the bus may have had a different expectation of privacy than those who sat near the front of the bus or near the bus driver. Moreover, given the proposed member's location on the bus, Keppley would need to establish that the bus cam audio capabilities were sufficient to attempt to or actually intercept the member's conversation.
- whether the proposed member engaged in conversation on the bus on a day on which the bus cam surveillance equipment was installed on the bus;
- whether the proposed member engaged in oral conversation with an expectation of privacy;
- whether the proposed member's expectation of privacy was reasonable. In order to determine this, the proposed member would need to testify as to people seated near them at the time of the conversation, their tone of voice, the loudness of their voice, and the presence or absence of noise made by others, the bus, radios/walkmans, etc.
- whether the proposed member was aware of the bus cams audiotaping capabilities and whether he/she was

unaware that audiotaping occurred on a particular day.

Thus, insofar as each proposed class member would be required to testify regarding his/her individual circumstances on any given day, we cannot conclude that the trial court erred in determining that Keppley failed to prove commonality under either Pa. R.C.P. No. 1702(2) or Fed. R.Civ.P. 23(a)(2).

### Typicality

■ For class certification, Keppley must establish that her claims are typical of the proposed class. Pa. R.C.P. No. 1702(3); Fed.R.Civ.P. 23(a)(3). This requires Keppley to show that her overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her interests will advance those of the proposed class. *Baldassari; Janicik.* "Typicality entails an inquiry into whether the named [plaintiff's] individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will be based." *Buynak v. Dep't of Transp.*, 833 A.2d 1159 (Pa. Cmwlth.2003), *appeal denied,* —— Pa. ——, 859 A.2d 769 (2004).

■ The typicality requirement may be met despite the existence of factual distinctions between the claims of the named plaintiff and the claims of the proposed class. *Reilly,* 965 F.Supp. 588. The court's inquiry must involve whether "the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Id.* at 598 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 177 (3rd Cir.1988)).

The trial court concluded that Keppley's proposed class representative position was weak because she did not show that her private conversations were actually recorded. The trial court further found that since typicality is closely akin to the commonality requirement, *see Cook v. Highland Water and Sewer Auth.*, 108 Pa. Cmwlth. 222, 530 A.2d 499 (1987), it logically followed that the typicality requirement was likewise not met.

■ Keppley's claims, however, are typical of the proposed class because her claims focus on the common allegation that Defendants illegally intercepted or attempted to intercept oral communications in violation of the Act and Title III. Any factual differences between Keppley's claims and the claims of the class arise from one singular course of conduct by Defendants, *i.e.*, audiotaping oral communications on school buses without the knowledge and/or consent of the students. In addition, Keppley does share some factual elements with members of the proposed class, since the alleged violations of the Act, Title III and 42 U.S.C. § 1983 all took place on school buses using the same exact method.

Therefore, we conclude that the trial court erred in determining that Keppley did not meet the typicality requirement under Pa. R.C.P. No. 1702(3) and Fed. R.Civ.P. 23(a)(3).

### Adequate and Fair Representation

■ The fourth prerequisite to class certification is that the plaintiff will "fairly and adequately assert and protect the interests of the class under the criteria set forth in [Pa. R.C.P. No. 1709]." Pa. R.C.P. No. 1702(4). Civil Rule 1709 requires the court to consider (1) whether the attorney for the representative party will adequately represent the interests of the entire class, (2) whether the representa-tive party has a conflict of interest in the maintenance of the class action, and (3) whether the representative party has or can acquire adequate financial resources to assure that the interests of the class will not be harmed. Pa. R.C.P. No. 1709.

With regard to Fed.R.Civ.P. 23(a)(4), the federal courts have stated that the relevant inquiry is whether plaintiff "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179.

In its determination, the trial court cited to that portion of Keppley's testimony wherein she displayed a lack of concern for the proceedings. During the August 26, 2003 certification hearing, Keppley complained that she was missing work, had not eaten and was tired. She failed to appear for the second certification hearing held December 29, 2003. The trial court thus concluded that she lacked the ability to fairly and adequately represent the class.

Even though not considered by the trial court in its determination, we further note that Keppley testified that although she has had some contact with other proposed class members, she "usually [doesn't] really want to talk about it" and that talking about the lawsuit "sort of gets on [her] nerves." R.R. 395a. Moreover, Keppley testified that she works two jobs, part-time at Dairy Queen as a cake decorator and full-time as a photographer. From her jobs, she earns approximately $450 per week. When asked by opposing counsel at the August 23, 2003 certification hearing, Keppley indicated that she had not signed any fee agreement with counsel for financing of the litigation or counsel's fees or paid any costs to date. R.R. 373a–374a. Given Keppley's testimony, we cannot con-

clude that the trial court abused its discretion in determining that she lacked the incentive to vigorously pursue the class action on behalf of the proposed membership. Moreover, from her testimony, it is clear that she lacks the financial resources to assure that the interests of the class will not be harmed and has no agreements in place to assist her in financing the action.

### *Fair and Efficient Method for Adjudication*

■ Pa. R.C.P. No. 1702(5) provides that the proposed class action must be a fair and efficient method for adjudicating the controversy. Pursuant to Rule 1708, the following factors are to be considered where monetary recovery alone is sought:

(1) whether common questions of law or fact predominate over any questions affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent and varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against

members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

Pa. R.C.P. No. 1708(a). For the corresponding federal requirements, *see* Fed. R.Civ.P. 23(b).

Keppley maintains that the trial court erred by not individually reviewing each requirement of Pa. R.C.R. No. 1708 and Federal Rule 23(b). We disagree.

Rule 1702 and Federal Rule 23 are written in the conjunctive, meaning that in order to obtain class action status, *all* prerequisites must be met. Because Keppley did not meet her burden of proving the prerequisites of Pa. R.C.P. No. 1702, specifically the requirements of commonality and adequate and fair representation, and as well as those of Fed.R.Civ.P. 23, specifically, definiteness, commonality, and adequate and fair representation, the trial court was not required to address the requirements of Rule 1708. *See Weismer* (where party failed to establish first two requirements of Pa. R.C.P. No. 1702, it was unnecessary for trial court to consider remaining elements of Rule).

■ Accordingly, based upon the foregoing, we affirm.[11]

11. In her final argument, Keppley maintains that the trial court erred in not analyzing

whether class action status should be granted based on her 42 U.S.C. § 1983 claims. Al-

## ORDER

AND NOW, this 25th day of January, 2005, the March 25, 2004 order of the Court of Common Pleas of Berks County is AFFIRMED.

## DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority affirms the order of the Court of Common Pleas of Berks County (trial court) denying the motion for class certification filed by Morgan Keppley (Keppley). For the following reasons, I would vacate and remand.

Keppley filed a complaint against the School District of Twin Valley (School District) and others responsible for the installation of audio surveillance equipment on school buses (the Defendants). The complaint sets forth a class action which alleges that the Defendants violated the Wiretapping and Electronic Surveillance Control Act (Act), 18 Pa.C.S. §§ 5701–5775, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. § 2511, and 42 U.S.C. § 1983. Keppley sought class certification for all persons who rode in school buses containing surveillance equipment from March 6, 1996, to August 16, 2001.

## I. Section 5725 of the Act

The trial court denied class certification, concluding that, under the Act, a proper class definition would be: persons who rode the school buses *and* whose oral communications actually were intercepted by surveillance equipment. (Trial ct.'s Conclusions of Law, No. 15.) The majority states that, under *Agnew v. Dupler,* 553 Pa. 33, 717 A.2d 519 (1998), the trial court

was incorrect and that, under the Act, Keppley could bring a civil suit for damages against the Defendants for *attempted* interception of her oral communications. (*See* Majority op. at 8.) I disagree.

Section 5703 of the Act essentially states that a person is guilty of a felony of the third degree if the person: (1) intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept any oral communication; (2) intentionally discloses or endeavors to disclose to any other person the contents of any oral communication having reason to know that the information was obtained through the interception of an oral communication; or (3) intentionally uses or endeavors to use the contents of an oral communication having reason to know that the information was obtained through the interception of an oral communication. 18 Pa.C.S. § 5703. Section 5702 of the Act defines "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

Section 5725(a) of the Act states that "[a]ny person whose ... oral communication *is intercepted, disclosed or used* in violation of this chapter shall have a civil cause of action [for damages] against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication...." 18 Pa.C.S. § 5725(a) (emphasis added). In addition, section 5726 of the Act allows an aggrieved person to bring an action against a public official or public employee seeking removal from employment on the

---

though the trial court did not address the issue, we note that Keppley failed to demonstrate a predominance of common issues relative to the § 1983 claims inasmuch each pro-

spective class member would need to testify regarding their individual situations on the school buses.

grounds that the official or employee intentionally *violated the Act.* 18 Pa.C.S. § 5726. To summarize, if anyone actually *intercepts* a person's oral communication, the person may file a civil action seeking damages. If a public official or public employee *endeavors to intercept* a person's oral communication, the person may file an action seeking removal from employment.

In *Agnew,* a police officer sought the removal of a police chief from employment under section 5726 of the Act after the police chief used an intercom to monitor the squad room. Thus, the police chief could have been removed from employment if the police chief violated the Act, i.e., *endeavored* to intercept the police officer's oral communications. *See* 18 Pa.C.S. §§ 5703 & 5726. Here, however, Keppley is *not* seeking to remove the Defendants from their employment under section 5726 of the Act. Rather, Keppley is seeking damages under section 5725 of the Act. As indicated above, section 5725 authorizes a person to file a civil action for damages only if the person's oral communication *"is* intercepted, disclosed or used." 18 Pa.C.S. § 5725 (emphasis added).

Unlike the majority, I would conclude that the trial court correctly decided that, to the extent Keppley is pursuing a class action under section 5725 of the Act, Keppley's proposed class definition, encompassing all persons who rode on buses with surveillance equipment, was overly broad.

Keppley needed to seek class certification for all persons who rode on school buses *and* whose oral communications actually were intercepted.[1] Moreover, I agree with the trial court that Keppley failed to present sufficient evidence to justify class certification for persons whose oral communications actually were intercepted.

## II. Count XXV—Civil Conspiracy

Although I believe the trial court was correct in its interpretation of section 5725 of the Act, I am troubled by the fact that the trial court failed to address Keppley's civil conspiracy claim in Count XXV. Section 5725 of the Act does not authorize a civil claim for damages based on a civil conspiracy theory. Thus, the civil conspiracy claim is separate from, and in addition to, the claims brought under section 5725 of the Act.[2]

Count XXV alleges that the Defendants engaged in a civil conspiracy to violate the Act by forming a scheme to intercept, disclose and use the contents of the oral communications of persons riding on school buses. To prove a civil conspiracy, it must be shown that two or more persons combined or agreed, with intent, to do an unlawful act. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979). Thus, the claim is that the Defendants, at a minimum, *endeavored* to intercept, disclose and use the oral communications of *all* persons who rode the school buses.[3]

1. With respect to Keppley's federal claims under Title III, I note that 18 U.S.C. § 2520(a) permits a civil action for damages only where a person's oral communication "is intercepted, disclosed, or intentionally used." Thus, as with the state claims under section 5725 of the Act, Keppley's federal claims under Title III require a class definition encompassing all persons who rode the school buses *and* whose oral communications actually were intercepted.

2. Likewise, with respect to the federal claims under Title III, 18 U.S.C. § 2520 does not authorize a civil action for damages based on a civil conspiracy theory.

3. I note that Keppley presented the following evidence in support of class certification, but the trial court made no findings of fact or conclusions of law based on this evidence.

Jeffrey Simmons, District Operations Director, testified that the School District decid-

This means that, although the class definition proposed by Keppley was inappropriate for the claims brought under section 5725 of the Act, the class definition was appropriate for the civil conspiracy claim in Count XXV. I submit that the trial court abused its discretion in failing to consider whether to certify the class with respect to Count XXV.[4]

### III. Class Certification

As indicated above, the majority concludes that Keppley's class definition is appropriate with respect to all claims, including claims brought under section 5725 of the Act. I conclude, however, that Keppley's class definition is appropriate only with respect to the civil conspiracy claim in Count XXV. The majority ultimately determines that the trial court properly de-

nied Keppley's motion for class certification with respect to the section 5725 and Title III claims, but I submit that, because of the trial court's failure to consider the proposed class definition, the trial court did not make sufficient findings of fact or conclusions of law as to whether class certification should be granted or denied with respect to the state claim in Count XXV.[5]

In Pennsylvania, the burden of establishing the prerequisites for class certification is not a heavy one; the proponent need only present sufficient evidence to make out a *prima facie* case for class certification.[6] *Baldassari v. Suburban Cable TV Co., Inc.*, 808 A.2d 184 (Pa.Super.2002), *appeal denied*, 573 Pa. 694, 825 A.2d 1259 (2003). It is the strong and oft-repeated policy of this Commonwealth that, in applying the rules for class certifi-

---

ed to obtain the surveillance systems for school buses after a fight occurred between a school bus driver and a student. (R.R. at 1187a, 1198a.) I would reasonably infer that, if such an incident were to occur in the future, the School District would like to know what words were exchanged between the bus driver and the student prior to the fight, and the School District would not care if the conversation was private. In fact, with respect to oral communications between students and bus drivers, it appears from a video tape contained in the record that the surveillance system is capable of intercepting any words spoken to a bus driver, or near a bus driver, by a student boarding or exiting a bus. (S.R.R. at 1b.) This is obviously because the microphone for the surveillance system is in the front of the bus near the bus driver. (R.R. at 1619a.)

Lyle Bliss, a retired high school principal, testified that he would request that a tape be made of a school bus run after receiving reports that students were using obscene language on the bus. (R.R. at 1676a.) Certainly, then, if a student used obscene language in speaking privately to the bus driver, the School District expected the surveillance system to record the obscene language so that the tape could be used to justify disciplining the student. In fact, the record contains questionnaires completed either by students

or parents indicating that the School District has disciplined students for cursing on the bus, (R.R. at 426a), for making inappropriate comments about the bus driver, (R.R. at 474a), and for using foul language, (R.R. at 476a). Moreover, in each instance, the School District played the tape from the particular bus for the student or parents to justify the discipline. (R.R. at 426a, 474a, 476a.)

**4.** The majority does not specifically address the civil conspiracy claim in Count XXV.

**5.** I note that the rules governing class certification in federal court differ from those in Pennsylvania. *See* Rule 23 of the Federal Rules of Civil Procedure; Pa. R.C.P. Nos. 1702, 1708, 1709, Explanatory Comment—1977 (comparing and contrasting Pennsylvania rules and federal Rule 23). Here, I submit only that the trial court failed to make adequate findings and conclusions with respect to the state civil conspiracy claim.

**6.** I note that the merits of the class action cannot be considered at the class certification stage of the proceedings. Pa. R.C.P. No. 1707, Explanatory Comment—1977. Because the class certification hearing occurs *after* the close of the pleadings, the court must have disposed of any demurrers attacking the substance of the complaint. *Id.*

cation, a court should make decisions liberally and in favor of maintaining a class action. *Id.* Thus, in a doubtful case, any error should be committed in favor of allowing the class action. *Janicik v. Prudential Insurance Company of America,* 305 Pa.Super. 120, 451 A.2d 451 (1982).

Nevertheless, trial courts are vested with broad discretion in making class certification decisions, and a court's denial of class certification will not be disturbed on appeal unless the court neglected to consider the requirements of the rules or unless the court abused its discretion in applying the rules. *Baldassari.* As stated above, the trial court in this case neglected to consider the requirements of the rules with respect to the civil conspiracy claim in Count XXV.

## A. Numerosity

Pa. R.C.P. No. 1702(1) states that a class member may sue on behalf of all members of a class if the class is so numerous that joinder of all members is impracticable. The majority concludes that Keppley satisfied the numerosity requirement under the Pennsylvania rules governing class certification. (Majority op. at 10.) Because I agree, I will not address the matter further.

## B. Commonality

Pa. R.C.P. No. 1702(2) states that a class member may sue on behalf of all members of a class if there are questions of law or fact common to the class. Common questions generally will exist if the class members' legal grievance arises out of the same practice or course of conduct on the part of the class opponent. *Janicik.* Here, in the civil conspiracy claim, the legal grievance of the class members arises out of the alleged conspiracy of the Defendants to intercept the class members' conversations, even those that were private. All questions of law and fact related to this

legal grievance are common to the class members.

The majority concluded that, with respect to the section 5725 claims, it would be necessary to have each individual person testify regarding his or her expectations of privacy on the school buses. (Majority op. at 11–13.) However, the individual expectations of privacy would be irrelevant in the civil conspiracy claim because such a claim rests solely on the intentions of the Defendants. In other words, even if the persons on the buses had no expectation of privacy in their conversations, the Defendants would be liable to the class if they endeavored to intercept the private conversations of persons riding the buses.

## C. Typicality

Pa. R.C.P. No. 1702(3) states that a class member may sue on behalf of all members of a class if the claims of the representative party are typical of the claims of the class. The majority concludes that Keppley met this requirement under the Pennsylvania rules governing class certification. (*See* majority op. at 14.) I agree and will not discuss it further.

## D. Fair and Adequate Representation

Pa. R.C.P. No. 1702(4) states that a class member may sue on behalf of all members of a class if the representative party will fairly and adequately assert and protect the interests of the class. Pa. R.C.P. No. 1709 requires the court to consider: (1) whether the attorney for the representative party will adequately represent the interests of the class; (2) whether the representative party has a conflict of interest in the maintenance of the class action; and (3) whether the representative party has or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

No one questions the ability of Keppley's attorney to adequately represent the

interests of the class, and no one suggests that Keppley has a conflict of interest in the maintenance of the class action. The only question is whether Keppley has or can acquire adequate financial resources to assure that the interests of the class will not be harmed. However, the trial court made no findings of fact or conclusions of law relating to Keppley's financial resources.[7] Thus, it is not possible for me to reach a conclusion on this issue.[8]

### E. Fair and Efficient Method

Pa. R.C.P. No. 1702(5) states that a class member may sue on behalf of all members of a class if a class action provides a fair and efficient method for adjudication of the controversy. Pa. R.C.P. No. 1708 lists multiple factors that must be considered in determining whether a class action provides a fair and efficient method for adjudication. However, the trial court made no findings of fact or conclusions of law relating to these factors. Thus, it is not possible for me to reach a conclusion on this issue.

Because the trial court did not consider whether class certification is appropriate with respect to the civil conspiracy claim in Count XXV and because the trial court did not make necessary findings of fact and conclusions of law relating to the rules governing certification of the proposed class, I would vacate and remand.

---

7. To the extent the majority concludes that Keppley lacks and cannot acquire financial resources to protect the interests of the class, the majority has made its own findings of fact.

8. The trial court found that Keppley would not adequately represent the class because she lacks the "eagerness and enthusiasm" to pursue her claims. (Trial ct.'s Conclusions of Law, No. 33.) However, this is not the question before us here. The majority states that, under the federal rules governing class actions, the plaintiff must have the "incentive to represent the claims of the class vigorously." (*See* majority op. at 15.) However, at this point, we are not dealing with a federal claim.